UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES O. MURRAY,

            Plaintiff,                   Case No. 9:06-CV-1445 (GTS/GJD)

v.

GLENN S. GOORD, DOCS Commissioner;
J. BURGE, Superintendent of Auburn C.F.;
TODD M. FINN, Correctional Sergeant;
EARL S. TALBOT, Correctional Officer;
MICHAEL G. GRANEY, Correctional Officer;
and J. ELSER, Correctional Officer;

            Defendants,
_____

APPEARANCES:                              OF COUNSEL:

JAMES O. MURRAY, 95-A-4417
  Plaintiff, *Pro Se*
Upstate Correctional Facility
PO Box 2001
Malone, NY 12953

HON. ANDREW M. CUOMO              TIMOTHY P. MULVEY, ESQ.
Attorney General for the State of New York    Assistant Attorney General
  Counsel for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, NY 13204-2455

HON. GLENN T. SUDDABY, United States District Court Judge

**DECISION and ORDER**

       This is a *pro se* prisoner civil rights action filed by James O. Murray ("Plaintiff") against six named employees, and an unidentified number of unnamed "John and Jane Doe" employees, of the New York State Department of Correctional Services ("Defendants"). Currently before the Court are the following two motions: (1) a motion for judgment on the pleadings pursuant to

Fed. R. Civ. P. 12(c), filed by Defendants Glenn S. Goord and John Burge ("the moving Defendants") (Dkt. No. 61); and (2) Plaintiff's motion for the production of various information, and for leave to identify, and move for the substitution of, the successor or representative of Defendant Marr (Dkt. No. 68).

For the reasons set forth below, the moving Defendants' motion is granted, and Plaintiff's motion is granted in part and denied in part. Moreover, Plaintiff's claims against Defendant Marr are dismissed without prejudice pursuant to Fed. R. Civ. P. 25. Finally, his claims against the John and Jane Doe Defendants named in his Complaint shall be dismissed without prejudice unless, within fourteen (14) days of the date of this Decision and Order, Plaintiff shows good cause for his failure to identify and serve those Defendants.

## I.    RELEVANT BACKGROUND

Because the moving Defendants have (in their motion papers) demonstrated an adequate understanding of the claims and factual allegations asserted in Plaintiff's Complaint, and because this Decision and Order is intended primarily for review by the parties, the Court will not recite in detail in this Decision and Order the claims and factual allegations asserted in Plaintiff's Complaint. Rather, the Court will state only that, generally, Plaintiff's Complaint asserts claims that, while he was incarcerated at Auburn Correctional Facility on May 12, 2005, Defendants used excessive force against him and/or failed to protect him from the use of such force, without provocation, strangling, punching and kicking him, and breaking one of his ribs, causing him extreme physical and mental pain. (*See generally* Dkt. No. 1.)

As for the procedural history of this action, because this Decision and Order is intended primarily for review by the parties, the Court will not recite in detail the procedural history of

this action, but will only make three observations. First, this action (which was filed on December 1, 2006) is scheduled to go to trial on March 1, 2010. Second, while the Docket Sheet in this action reflects that Plaintiff still has pending claims against Defendant Marr, a suggestion of death has been filed with regard to that Defendant; Plaintiff has not filed a motion to substitute the successor or representative of Defendant Marr; and the deadline for doing has long since expired (having done so on March 15, 2009). (Dkt. Nos. 34, 46, 50, 54.) Third, while the Docket Sheet in this action reflects that Plaintiff still has pending claims against an unidentified number of John and Jane Doe Defendants (both medical staff and correctional staff), Plaintiff has failed to identify and serve those Defendants, despite the Court's express Order to do so (Dkt. No. 4, at 3-5); and the deadline by which to file a motion to amend his Complaint has long since expired, having done so on June 16, 2008 (Dkt. No. 39).

## II.    STANDARD GOVERNING MOTIONS FOR JUDGMENT ON PLEADINGS

A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is decided according to the same standard as is a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983).

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga County*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review) [citations omitted].

With regard to the first ground, Fed. R. Civ. P. 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ.

P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 [citations omitted]. The main purpose of this rule is to "facilitate a proper decision on the merits." *Id*. at 212, n.18 [citations omitted].[1]

The Supreme Court has long characterized this pleading requirement under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. *Id*. at 212, n.20 [citations omitted]. However, even this liberal notice pleading standard "has its limits." *Id*. at 212, n.21 [citations omitted]. As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard. *Id*. at 213, n.22 [citations omitted]; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corporation v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

---

[1] *See also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69.  Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim.  *Id*. at 1965-74.  The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]."  *Id*. at 1965 [citations omitted].  More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true.  *Id*. [citations omitted].[2]

As have other Circuits, the Second Circuit has recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, including claims brought by *pro se* litigants (although the plausibility of those claims is to be assessed generously, in light of the special solicitude normally afforded *pro se* litigants).[3]  It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary"

---

[2]     *See also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[The Supreme Court] is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.").

[3]     *See*, *e.g.*, *Jacobs v. Mostow*, 271 F. App'x 85, 87 (2d Cir. March 27, 2008) (in *pro se* action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Rule 32.1[c][1] of the Local Rules of the Second Circuit); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir. 2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation omitted; emphasis added]. That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level.[4]

As the Supreme Court recently explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

---

[4] For example, in *Erickson*, the Supreme Court held that, because the plaintiff-prisoner had alleged that, during the relevant time period, he suffered from hepatis C, he had alleged facts plausibly suggesting that he possessed a sufficiently serious medical need for purposes of an Eighth Amendment claim of inadequate medical care. *Erickson*, 127 S. Ct. at 2199-2200. Expressed differently, the Court held that such a plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication (a requirement that had been imposed by the district court). This point of law is hardly a novel one, which is presumably why the *Erickson* decision was relatively brief. Prior to the Supreme Court's decision, numerous decisions, from district courts within the Second Circuit alone, had found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000). The important thing is that, in *Erickson*, even the *pro se* plaintiff was required to allege some sort of fact.

misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft*, 129 S.Ct. at 1949 (citing Fed. Rule Civ. Proc. 8[a][2]). Rule 8 "demands more than an unadorned, the-defendant- unlawfully -harmed-me accusation." *Ashcroft*, 129 S.Ct. at 1949. Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal citations and alterations omitted).

Finally, in reviewing a complaint for dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. This standard is applied with even greater force where the plaintiff alleges civil rights violations and/or where the complaint is submitted *pro se*. However, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed),[5] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12.[6] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[7] Stated more plainly, when a plaintiff is

---

[5] *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008); *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

[6] *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with FED. R. CIV. P. 8); *accord*, *Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

[7] *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . . we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S.

proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." *Jackson*, 549 F. Supp.2d at 214, n.28 [citations omitted].

## III.   ANALYSIS

### A.   Moving Defendants' Motion for Judgment on Pleadings

Generally, in their motion for judgment on the pleadings, Defendants Goord and Burge argue that Plaintiff's claims against them must be dismissed because (during the time in question) they were high-level supervisors, and Plaintiff's Complaint has failed to allege facts plausibly suggesting that they were personally involved in the constitutional violations alleged. (*See generally* Dkt. No. 61.)

Despite having been advised that he must oppose the moving Defendants' motion (*see* Text Order filed on October 23, 2009), and despite having been granted an extension of the deadline by which to respond to the moving Defendants' motion (*see* Text Order filed on November 10, 2009), Plaintiff has failed to oppose that motion. As a result, the moving Defendants' burden with regard to their motion is lightened such that they need only show that their motion has "facial merit" in order to succeed. *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1 n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases).[8]

---

806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted], *accord*, *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983); *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

   [8]   *Cf. Di Giovanna v. Beth Isr. Med. Ctr.*, 08-CV-2750, 2009 WL 2870880, at *10 n.108 (S.D.N.Y. Sept. 8, 2009) (citing cases for proposition that plaintiff's failure to respond to

Based on Plaintiff's Complaint and Defendants' motion papers, the Court finds that Defendants have met this lightened burden. In any event, the Court finds that Defendants' argument would survive even the heightened scrutiny appropriate on a contested motion, for the reasons stated by Defendants Goord and Burge in their memoranda of law. (Dkt. No. 61, Attach. 1, at 3-5 [Moving Defs.' Memo. of Law].) The Court would add only one point.

Generally, before a district court dismisses a *pro se* civil rights complaint, the Court will first permit the plaintiff to amend his complaint. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999).[9] However, such an opportunity to amend is not required where the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile.

As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted), *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better

---

argument made in summary judgment motion as to why certain claim should be dismissed constitutes abandonment of claim).

[9]  The Court recognizes that Fed. R. Civ. P. 15(a)(1) affords a plaintiff the right to amend his complaint once as a matter of course before he has been served with a responsive pleading. Fed. R. Civ. P. 15(a)(1). However, here, responsive pleadings–i.e., Defendants' Answers–have already been filed. (Dkt. Nos. 18, 24.)

pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend should be denied.").[10]

This rule applies even to *pro se* plaintiffs. *See, e.g., Cuoco*, 222 F.3d at 103; *Brown*, 1997 WL 599355 at *1. While the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed),[11] it does not completely relieve a *pro se* plaintiff of the duty to comply with the Federal Rules of Civil Procedure and Local Rules of Practice.[12] Rather, as both the Supreme

---

[10] The Court notes that two Second Circuit cases exist reciting the standard as being that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Federal Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The problem with these cases is that their "rule out any possibility, however likely it might be" standard is rooted in the "unless it appears beyond doubt" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which was "retire[d]" by the Supreme Court in *Bell Atlantic Corporation v. Twombly*, 127 S. Ct. 1955 (2007). *See Gomez v. USAA Federal Sav. Bank*, 171 F.3d 794, 796 (relying on *Branum v. Clark*, 927 F.2d 698, 705 [2d Cir. 1991], which relied on *Conley v. Gibson*, 355 U.S. 41, 45-46 [1957]). Thus, this standard does not appear to be an accurate recitation of the governing law.

[11] *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008); *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

[12] *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir. 1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8); *accord*, *Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

Court and Second Circuit have repeatedly recognized, even *pro se* civil rights plaintiffs must follow such procedural rules.[13]

Here, for the reasons stated above, the Court finds that the deficiencies with Plaintiff's rather-detailed claims against Defendants Goord and Burge are substantive in nature, not merely formal. Furthermore, the Court notes that the deadline for filing motions to amend (which has already been extended four times) expired on June 16, 2008, and Plaintiff has not shown cause for the extension of that deadline.

For each of these two alternative reasons, the Court finds that it would be futile to provide Plaintiff with a further opportunity to amend his claims against Defendants Goord and Burge before dismissal; and the Court dismisses those claims without doing so.

> **B.    Plaintiff's Motion for Production of Various Information, and for Leave to Identify and Substitute the Successor or Representative of Defendant Marr**

Generally, in his motion, Plaintiff requests the following three forms of relief: (1) an Order directing Defendants to give Plaintiff the information he needs to identify, and move for the substitution of, the successor or representative of Defendant Mar, and granting Plaintiff leave

---

[13]    *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . . we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted], *accord*, *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983); *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Fed. R. Civ. P. 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

to move to substitute that successor or representative; (2) an Order granting Plaintiff leave to conduct limited discovery to obtain the names of witnesses to the assault that allegedly occurred at Auburn Correctional Facility on May 12, 2005, which information Plaintiff lost in about June 2009, while he was in transit and his legal papers were lost; and (3) production (presumably by either Defendants or the Court) of certain materials on file with the Court, specifically, Dkt. Nos. 59, 64 and 67 and the Text Order filed on October 6, 2009, which materials he (allegedly) never received in the mail. (Dkt. No. 68.)

In a late response (which the Court accepted for filing due to the reason for the lateness), Defendants argue that (1) Plaintiff should not be granted leave to identify and substitute the successor or representative of Defendant Mar because, in the parties' final pre-trial teleconference with United States Magistrate Judge Gustave J. DiBianco on September 15, 2009, Plaintiff told Magistrate Judge DiBianco that he did not wish to pursue such a substitution, and (2) an Order requiring Defendants to produce to Plaintiff certain materials on file with the Court is not necessary because Plaintiff may obtain those materials from the Clerk's Office without an Order. (Dkt. No. 69.)

> **1.** **Request for an Order Directing Defendants to Give Plaintiff the Information He Needs to Identify the Successor or Representative of Defendant Mar, and Granting Plaintiff Leave to Move to Substitute that Successor or Representative**

With regard to Plaintiff's request for an Order directing Defendants to give him information he needs to identify the successor or representative of Defendant Marr, and granting Plaintiff leave to move to substitute that successor or representative, that request is denied for two alternative reasons.

First, as an initial matter, contrary to Plaintiff's representation in his motion, Magistrate Judge DiBianco never *directed* Defendants to give Plaintiff information regarding Defendant Marr's successor or representative. Rather, Magistrate Judge DiBianco *requested* that the *DOCS* General Counsel's Office provide two pieces of information, only one of which was not subsequently provided.

More specifically, Defendants filed a suggestion of death with regard to Defendant Marr on February 21, 2008. (Dkt. No. 34.) That document advised Plaintiff that, pursuant to Fed. R. Civ. P. 25, unless he filed a motion for substitution within ninety (90) days, his claims against Defendant Marr would be dismissed. (*Id*.) Despite this fact, it was not until July 30, 2008, that Plaintiff requested (1) an extension of that motion-filing deadline, and (2) assistance from the Clerk's Office regarding how to identify the successor or representative of Defendant Marr. (Dkt. No. 41, at 2, 4.) On September 29, 2008, Defendants opposed that request. (Dkt. No. 44, ¶ 9.) On November 12, 2008, out of special solicitude to Plaintiff, Magistrate Judge DiBianco granted in part, and denied in part, Plaintiff's untimely request, extending the referenced motion-filing deadline to January 5, 2009, and "request[ing]" the DOCS General Counsel's Office to advise the Court in writing, within thirty (30) days, whether it has been appointed agent for service of process by the successor or representative of Defendant Marr and, if not, to provide the Court with any information it may have regarding the identity and location of Defendant Marr's successor or representative. (Dkt. No. 46, at 3-6.) On January 28, 2009, Magistrate Judge DiBianco extended the referenced motion-filing deadline to March 15, 2009, and "requested" that the DOCS General Counsel's Office provide the referenced information to the Court by February 28, 2009. (Dkt. No. 50, at 2-3.) On March 13, 2009, Deputy Counsel

William M. Gonzalez, of the DOCS General Counsel's Office, advised the Court that it has not been appointed an agent for service of process for Defendant Marr. (Dkt. No. 54.)

As a result, no grounds exist to blame *Defendants* for the apparent oversight of the DOCS General Counsel's Office, which is not a party to this action (due to sovereign immunity under the Eleventh Amendment).[14] Moreover, for the same reason as Magistrate Judge DiBianco issued merely a *request* (rather than a directive) to the DOCS General Counsel's Office, the Court declines to issue a directive to anyone to provide the information requested by Plaintiff, under the circumstances.[15] There is a fine line between extending special solicitude to a *pro se* civil rights plaintiff (through requesting a non-party to identify a deceased defendant's successor or representative, if it can do so) and actually conducting discovery for that plaintiff (by issuing

---

[14]   *Cf. Koehl v. Greene,* 06-CV-0478, 2008 WL 4924950, at *1 (N.D.N.Y. Nov. 18, 2009) (Suddaby, J.) (recognizing that DOCS was not a defendant in a prisoner civil rights action against individual employees of DOCS), *Reid v. New York State Dept. of Corr. Servs.*, 05-CV-0006, 2006 WL 2792738, at *1, n.1 (N.D.N.Y. Sept. 26, 2006) (Kahn, J.), *accord*, *Andrews v. Cruz*, 04-CV-0566, 2006 WL 1984650, at *1 (S.D.N.Y. July 14, 2006), *Joseph v. Supple*, 96-CV-2640, 2005 WL 2542532, at *6, n.1 (S.D.N.Y. Oct. 11, 2005).

[15]   The Court notes that it appears to be the typical practice in this District for the Clerk's Office to request such assistance of the DOCS General Counsel's Office, not for a judge to direct such assistance. *See*, *e.g.*, *Murray v. Pataki*, 03-CV-1263, 2009 WL 981217, at *5, 17 (N.D.N.Y. Apr. 9, 2009) (Suddaby, J., adopting Report-Recommendation of Treece, M.J.) (stating that "the Court requested . . . that the Office of DOCS Counsel provide the Clerk of the Court with pertinent information about 'Dr. Melendez' . . ."); *Brown v. Raimondo*, 06-CV-0773, 2009 WL 799970, at *1, n.1 (N.D.N.Y. Feb. 25, 2009) (Treece, M.J.) ("The Court has allotted, to no avail, its assistance in procuring an updated address for Mr. Wells, who, upon information and belief, has retired. Dkt. No. 25 (letter from Clerk's Office personnel to William Gonzalez, Esq., seeking updated address information for Mr. Wells)."); *Lebron v. Swaitek*, 05-CV-0172, 2008 WL 755070, at *2 (N.D.N.Y. March 19, 2008) (Sharpe, J.) ("In this case, where service on defendants was unsuccessful because they were not on active assignment at the facility at which service was attempted or they had retired from the DOCS, further steps must be taken to either locate the individuals or, as frequently happens, to request that DOCS General Counsel undertake to assist in locating them within the DOCS system, or to be appointed as their agent for service of process.").

an Order, pursuant to Fed. R. Civ. P. 37, compelling the non-party to produce information regarding the identity of that successor or representative, where the plaintiff has not shown that he had unsuccessfully tried to obtain the information in question through the use of discovery tools available to him).[16] The Court notes that Plaintiff, who is experienced at litigating *pro se* civil rights actions in federal court,[17] has not sufficiently established that he unsuccessfully tried to obtain the information in question through the use of discovery tools available to him, including (1) the issuance of interrogatories, document requests, and/or subpoenas on Defendants, (2) an application for a subpoena to be served on a non-party pursuant to Fed. R. Civ. P. 45, (3) a request pursuant to the New York State Freedom of Information Law, or (4) a simple letter request to the DOCS General Counsel's Office.

Second, even if the Court were inclined to issue such a directive to a non-party in the absence of a demonstration of prior effort by the plaintiff, the Court finds that Plaintiff's request for relief is plagued by undue delay and bad faith. The deadline for the completion of discovery

---

[16] *See Grant v. McGill*, 06-CV-1063, 2006 WL 2666087, at *1 (D. Conn. Sept. 15, 2006) (refusing to subpoena the records of a non-party to enable the petitioner to learn the identity of an individual, and explaining, "The court impartially adjudicates cases. It does not conduct discovery. If the court were to conduct discovery on behalf of a litigant, it would become an advocate for that litigant. This is not permitted.") [citation omitted]; *cf. Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998) (recognizing that "a court need not act as an advocate for *pro se* litigants . . ." and permitting *pro se* plaintiff only an "*opportunity* for appropriate discovery" to learn the identity of individuals personally involved in the constitutional violations alleged) [emphasis added; citations omitted].

[17] Apart from the numerous other *pro se* prisoner civil rights actions that Plaintiff had filed and litigated in other federal district courts in this Circuit by the time in question (available for viewing on PACER), Plaintiff had filed and litigated five other *pro se* prisoner civil rights actions in this District by the time in question. *See Murray v. State of New York*, 03-CV-1010 (N.D.N.Y.); *Murray v. Bushey*, 04-CV-0805 (N.D.N.Y.); *Murray v. Goord*, 05-CV-1113 (N.D.N.Y.); *Murray v. Wissman*, 05-CV-1186 (N.D.N.Y.); *Murray v. Goord*, 05-CV-1579 (N.D.N.Y.).

in this action was June 30, 2008, and the deadline for the filing of motions to compel was July 30, 2008. (Dkt. No. 39.) Moreover, according to the Docket Sheet in this action, Plaintiff has never filed a motion to substitute the successor or representative of Defendant Marr–either by the March 15, 2009, deadline for such a motion, or thereafter. (*See generally* Docket Sheet.)[18] Furthermore, Plaintiff has not offered any excuse whatsoever for failing to raise this issue before now–approximately three months before the start of trial. Indeed, the Court has reviewed the audiotape of the parties' final pre-trial teleconference with Magistrate Judge DiBianco on September 15, 2009, and has confirmed that Plaintiff indeed indicated that he no longer wished to pursue such a substitution.

Specifically, when Magistrate Judge DiBianco advised Plaintiff that pursuing the issue of the identity of Defendant Marrs' successor or representative would effectively delay the Trial Ready Date in his action, Plaintiff responded: "Whatever, forget it. I don't even care. He died. His family aint got nothing to do with this. Forget it. I don't even care. Don't worry about it. Don't worry, I understand. I'm a prisoner *pro se*, I got to just take the lumps." When Magistrate Judge DiBianco responded to this last remark by revisiting the issue of Plaintiff's learning the identity of Defendant Marrs' successor or representative, Plaintiff interrupted him, responding: "It don't even matter no more 'cause I already–I want to go to trial real quick, and plus the guy died, and, you know, his family aint got nothing to do with it. He aint no rich guy. I don't care. I don't even care."

---

[18]   Although Plaintiff swears that he filed a motion to substitute before March 15, 2009, and that he possesses an affidavit of service to prove that fact, he has not provided that affidavit of service to the Court. (*See* Dkt. No. 68.) More importantly, he does not swear that the "motion" he filed actually identified the successor or representative of Defendant Marr–a rather important feature of such a motion. (*Id.*)

16

**2.   Request for an Order Granting Plaintiff Leave to Conduct Limited Discovery in This Action to Obtain the Names of Witnesses to the Assault that Allegedly Occurred at Auburn C.F. on May 12, 2005**

With regard to Plaintiff's request for an Order granting him leave to conduct limited discovery in this action to obtain the names of certain witnesses, that request is denied for two alternative reasons. First, Plaintiff has not offered justification for failing, until now, to seek from Defendants this information (which he asserts he lost in about June 2009). As explained above, the deadline for the completion of discovery in this action was June 30, 2008, and the deadline for the filing of motions to compel was July 30, 2008. To extend these deadlines *nunc pro tunc* at this late stage of the action, Plaintiff must show good cause for an extension. *See* Fed. R. Civ. P. 16(b)(4) ("A [scheduling order] may be modified only for good cause and with the judge's consent."). He has not done so.[19] Second, even if the Court were to extend these deadlines, the Court would find that Plaintiff has not shown cause for the discovery sought in his motion. For example, he has not established that Defendants possess the information in question, or the form in which it would likely exist. Moreover, in the parties' final pre-trial teleconference with Magistrate Judge DiBianco on September 15, 2009, Plaintiff informed Magistrate Judge DiBianco that he (Plaintiff) did still have one of the five or six affidavits he

---

[19]   The Court notes that, in the parties' final pre-trial teleconference with Magistrate Judge on September 15, 2009, Magistrate Judge DiBianco informed Plaintiff that, based on the circumstances then-known to the Court, the Court was not inclined to reopen discovery in order for Plaintiff to attempt to rediscover this information. None of those circumstances have changed since September 15, 2009. The Court further notes that, in that teleconference, Plaintiff indicated that the loss of the information–which existed in the form of four or five affidavits of other inmates–occurred while he was being transferred to Downstate Correctional Facility in June 2009, to attend a trial in another of his litigations. He did not assert in that teleconference, nor has he asserted in his current motion, that any Defendant in this action played any role in the loss of the information in question.

originally had, which contained the information in question (i.e., the names of other inmates who witnessed the assault alleged in Plaintiff's Complaint). <u>However, out of special solicitude to Plaintiff, the Court advises him that, if he is claiming that the information he seeks was contained in discovery responses provided to him by Defendants, which he subsequently lost, he should promptly advise the Court of that fact, in which case the Court will request defense counsel to promptly provide Plaintiff's counsel with courtesy copies of those lost discovery responses</u>.

### 3. Request for Production of Certain Materials on File with the Court, which Plaintiff (Allegedly) Never Received in the Mail

With regard to Plaintiff's request for a courtesy copy of certain materials on file with the Court, that request is granted. The Clerk of the Court is directed to mail to Plaintiff (free of charge) a copy of Dkt. Nos. 59, 64 and 67 and the Text Order filed on October 6, 2009. The Court would add only that it is providing courtesy copies of these documents to Plaintiff merely out of special solicitude to him, and that no record evidence exists that any of these documents were not served on Plaintiff or his counsel in a timely fashion.

For all of the above-stated reasons, Plaintiff's motion is granted in part and denied in part.

### C. Claims Against Defendant Marr

Because of the mandatory nature of the dismissal set forth in Fed. R. Civ. P. 25(a)(1), and because of Plaintiff's failure to file a timely motion to substitute the successor or representative of Defendant Marr (as described above in Part III.B. of this Decision and Order), Plaintiff's claims against Defendant Marr are dismissed from this action pursuant to Fed. R. Civ. P. 25. However, out of special solicitude to Plaintiff, those claims are dismissed without prejudice.

### D. Claims Against John and Jane Doe Defendants

As stated above in Part I of this Decision and Order, while the Docket Sheet in this action reflects that Plaintiff still has pending claims against an unidentified number of John and Jane Doe Defendants (both medical staff and correctional staff), Plaintiff has failed to identify and serve those Defendants, despite the Court's express Order to do so. Furthermore, the deadline by which to file a motion to amend his Complaint has long since expired (having done so on June 16, 2008).

As a result, these claims shall be dismissed without prejudice unless, within fourteen (14) days of the date of this Decision and Order, Plaintiff shows good cause for his failure to identify and serve those Defendants. Plaintiff is advised that, in the event he fails to show such good cause, his claims against the John and Jane Doe Defendants will be dismissed without prejudice on the following alternative grounds: (1) failure to serve pursuant to Fed. R. Civ. P. 4(m); (2) failure to comply with a Court Order pursuant to Fed. R. Civ. P. 41(b); and (3) failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

**ACCORDINGLY**, it is

**ORDERED** that the motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), filed by Defendants Goord and Burge (Dkt. No. 61), is **GRANTED**; and it is further

**ORDERED** that all of Plaintiff's claims against Defendants Goord and Burge are **DISMISSED** without prejudice for failure to state a claim; and it is further

**ORDERED** that Plaintiff's motion for the production of various information, and for leave to identify and substitute the successor or representative of Defendant Marr (Dkt. No. 68) is **GRANTED** in part, and **DENIED** in part, in the following respects:

(1) Plaintiff's request for an Order directing Defendants to give him information regarding the successor or representative of Defendant Marr, and granting Plaintiff leave to so identify and substitute that successor or representative, is denied;

(2) Plaintiff's request for an Order granting him leave to conduct limited discovery in this action to obtain the names of certain witnesses is denied; and

(3) Plaintiff's request for a courtesy copy of certain materials on file with the Court is granted, and the Clerk of the Court is directed to mail to Plaintiff (free of charge) a copy of Dkt. Nos. 59, 64 and 67 and the Text Order filed on October 6, 2009; and it is further

**ORDERED** that Plaintiff's claims against Defendant Marr are **DISMISSED** without prejudice pursuant to Fed. R. Civ. P. 25; and it is further

**ORDERED** that Plaintiff shall, within **FOURTEEN (14) DAYS** of the date of this Decision and Order, show good cause for his failure to identify and serve the John and Jane Doe Defendants named in his Complaint; and it is further

**ORDERED** that, in the event Plaintiff fails to show such good cause, his claims against the John and Jane Doe Defendants will be **DISMISSED** without prejudice on the following alternative grounds: (1) failure to serve pursuant to Fed. R. Civ. P. 4(m); (2) failure to comply with a Court Order pursuant to Fed. R. Civ. P. 41(b); and (3) failure to prosecute pursuant to Fed. R. Civ. P. 41(b).

Dated: December 10, 2009
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge