UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES O. MURRAY,

                          Plaintiff,                    9:06-CV-1445
                                                                   (GTS/GJD)
v.

GLENN S. GOORD, DOCS Commissioner;
J. BURGE, Superintendent of Auburn C.F.;
TODD M. FINN, Correctional Sergeant;
EARL S. TALBOT, Correctional Officer;
MICHAEL G. GRANEY, Correctional Officer;
and J. ELSER, Correctional Officer;

                          Defendants,
_____

APPEARANCES:                                      OF COUNSEL:

BOSMAN LAW OFFICE                     AJ BOSMAN, ESQ.
  Counsel for Plaintiff
6599 Martin Street
Rome, NY 13440

HON. ERIC T. SCHNEIDERMAN          TIMOTHY P. MULVEY, ESQ.
Attorney General for the State of New York    Assistant Attorney General
  Counsel for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, NY 13204-2455

HON. GLENN T. SUDDABY, United States District Judge

## **MEMORANDUM-DECISION and ORDER**

       Currently before the Court in this prisoner civil rights action, filed by James Murray

("Plaintiff") against six employees of the New York State Department of Correctional Services

("Defendants"), is Defendants' post-trial motion for an order granting them judgment as a matter

of law, notwithstanding the jury's verdict, or, in the alternative, a new trial, or, in the alternative,

remittitur. (Dkt. No. 107.)[1]  For the reasons set forth below, Defendants' motion is granted in part and denied in part.

I.     RELEVANT BACKGROUND

   A.     Procedural History

Because a trial has already been held in this matter concerning the claims and factual allegations asserted in Plaintiff's Complaint, and because this Decision and Order is intended primarily for review by the parties, the Court will not recite in detail in this Decision and Order the claims and factual allegations asserted in Plaintiff's Complaint.  Rather, the Court will state only that, generally, Plaintiff's Complaint claims that, while he was incarcerated at Auburn Correctional Facility on May 12, 2005, Defendants used excessive force against him and/or failed to protect him from the use of such force, without provocation, strangling, punching and kicking him, and breaking one of his ribs, causing him extreme physical and mental pain.  (*See generally* Dkt. No. 1.)

As for the procedural history of this action, again, because this Decision and Order is intended primarily for review by the parties, the Court will not recite in detail the procedural history of this action, but will only make the following limited observations.

On March 1, 2010, a jury trial in this action began in Syracuse, New York.  At the close of Plaintiff's case, Defendants made a motion for judgment as a matter of law with regard to all of Plaintiff's claims, on which the Court reserved ruling.  At the close of all proof, Defendants

---

[1] The Court notes that Plaintiff's motion for an award of costs and attorneys' fees, filed pursuant to Fed. R. Civ. P. 54(d) and 42 U.S.C. § 1988 (Dkt. No. 112), has been stayed pending the outcome of Defendants' motion for an order granting them judgment as a matter of law. (Text Order of April 21, 2010.)

renewed their motion for judgment as a matter of law, on which the Court again reserved decision.

On March 3, 2010, the jury returned a verdict for Plaintiff against two of the four Defendants: Earl Talbot and Michael Graney. The jury awarded Plaintiff a total of one-hundred-fifty thousand dollars ($150,000) in compensatory damages ($100,000 against Defendant Talbot and $50,000 against Defendant Graney) for past pain and suffering, and determined that punitive damages were not warranted. On March 4, 2010, judgment was entered on the jury's verdict.

### B. Summary of Parties' Arguments on Defendants' Motion

On March 17, 2010, Defendants Earl Talbot and Michael Graney renewed their motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b). (Dkt. No. 107.) In the alternative, Defendants request either (1) a new trial pursuant to Fed. R. Civ. P. 59, or (2) a reduction in the compensatory damages awarded by the jury. (*Id*.) In support of this alternative request, Defendants argue that the jury's verdict should be set aside, and/or a new trial should be ordered, for the following four reasons: (1) the jury's verdict was inconsistent; (2) the verdict against Defendant Talbot was not supported by a preponderance of the evidence; (3) the verdict against Defendant Graney was not supported by a preponderance of the evidence; and (4) Plaintiff's counsel's conduct during summation was not "fair comment" on the evidence, and improperly influenced the jury. (*Id*.) Finally, in the event that the Court rejects these arguments, Defendants argue that the Court should significantly reduce the award of compensatory damages for Plaintiff's injury as unsupported by the evidence. (*Id*.)

In response, Plaintiff argues that the verdict and damage award should be upheld for the following reasons: (1) the argument that the jury's verdict is "inconsistent" was raised for the

first time in the Defendants' post-trial motions, and has thus been waived and/or forfeited; (2) even assuming that Defendants' argument that the verdict is inconsistent has not been waived, the argument is without merit; (3) Defendants' argument that Plaintiff failed to establish that Defendant Talbot was the proximate cause of his injuries is without merit because Plaintiff testified that his rib was broken during the assault; (4) the evidence introduced at trial supports the jury's imposition of liability against Defendant Graney for failure to intercede; (5) the argument that Plaintiff's counsel made inappropriate comments in the presence of the jury was raised for the first time in Defendants' post-trial motions, and has thus been waived; (6) even assuming that this argument has not been waived, Plaintiff's counsel did not inappropriately call the jury's attention to the fact that Defendants did not call the nurse because "Defendants advised of their intention to call the nurse in question but inexplicably failed to produce her"; and (7) the jury's damages award is amply supported by the trial record and is actually less than, or at least equal to, awards which were upheld for injuries in the absence of physical harm. (Dkt. No. 121.)

## II.   LEGAL STANDARDS GOVERNING DEFENDANTS' POST-TRIAL MOTIONS

"The standards which govern motions for judgment as a matter of law . . . and for a new trial, while not entirely dissimilar, are distinctly different." *Martinez v. Thompson*, 04-CV-0440, 2008 WL 5157395, at *4 (N.D.N.Y. Dec. 8, 2008) (Peebles, M.J.). "Despite their differences, however, both are tempered by [Fed. R. Civ. P. 61], which provides [as follows]:

> [u]nless justice requires otherwise, no error in admitting or excluding evidence–or any other error by the court or a party–is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

*Martinez*, 2008 WL 5157395, at *4 (quoting Fed. R. Civ. P. 61) (other citations omitted).

4

**A.     Defendants' Motion for Judgment as a Matter of Law**

Motions seeking judgment as a matter of law ("JMOL"), following a jury trial, are governed by Fed. R. Civ. P. 50(b), which provides, in relevant part, as follows:

> [i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 10 days after the entry of judgment–or if the motion addresses a jury issue not decided by a verdict, no later than 10 days after the jury was discharged–the movant may file a renewed motion or judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

Fed. R. Civ. P. 50(b). "The rule goes on to provide that in ruling upon such a motion following the return of a jury verdict, a court may allow the judgment to stand, order a new trial, or direct the entry of judgment as a matter of law notwithstanding that a verdict was returned against the moving party." *Martinez*, 2008 WL 5157395, at *5 (citing, *inter alia*, Fed. R. Civ. P. 50[b]).

"The burden which a litigant faces when seeking JMOL in the face of an adverse jury verdict, while not insurmountable, is substantial." *Id*. "JMOL notwithstanding a contrary jury verdict is appropriately entered only when the evidence, viewed in the light most favorable to the non-moving party, is susceptible of supporting only one possible verdict, in favor of the moving party." *Id*. (citing, *inter alia*, *Jund v. Town of Hempstead*, 941 F.2d 1271, 1290 [2d Cir. 1991]).

As the Second Circuit noted in *Jund*, such a JMOL is warranted when

> (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him.

*Jund*, 941 F.2d at 1290 (quoting, *inter alia*, *Mattivi v. S. African Marine Corp.*, 618 F.2d 163, 168 [2d Cir. 1980]).

"In deciding a motion for JMOL, the court must draw all reasonable inferences in favor of the non-moving party and may not make credibility determinations or weigh the evidence, as those functions properly fall within the jury's province." *Martinez*, 2008 WL 5157395, at *5 (citing, *inter alia*, *Mickle v. Morin*, 297 F.3d 114, 120 [2d Cir. 2002]).

### B.   Defendants' Alternative Motion for New Trial

Post-trial motions seeking a new trial are governed by Fed. R. Civ. P. Rule 59, which provides, in pertinent part, as follows: "[t]he court may, on motion, grant a new trial on all or some of the issues–and to any party–. . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]"  Fed. R. Civ. P. 59(a)(1)(A). "Applying this standard, the Second Circuit has cautioned that ordering a new trial is justified only when the court is convinced that the jury has reached a 'seriously erroneous result' or that the verdict represents a 'miscarriage of justice.'" *Martinez*, 2008 WL 5157395, at *5 (quoting *Nimely v. City of New York*, 414 F.3d 381, 390 [2d Cir. 2005]) (other citations omitted).

"Unlike a motion for JMOL under [Fed. R. Civ. P.] 50(b), when addressing a new trial motion a court is permitted to weigh the evidence presented at trial, and is not necessarily bound to view it in a light most favorable to the non-moving party." *Martinez*, 2008 WL 5157395, at *6 (citing *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133-134 [2d Cir. 1998]).  "A jury's credibility determinations, however, are entitled to great deference, and mere disagreement by the court with a jury's verdict, without more, does not entitle a party to relief under [Fed. R. Civ. P.] 59." *Martinez*, 2008 WL 5157395, at *6 (citing, *inter alia*, *Meiselman v. Byrom*, 207 F. Supp.2d 40, 42 [E.D.N.Y. 2002]).  "A court should generally be indisposed to disturb a jury's verdict on a [Fed. R. Civ. P.] 59 motion unless the verdict is considered to have been egregious." *Martinez*, 2008 WL 5157395, at *6 (internal quotation marks and citations omitted).

      **C.**    **Defendants' Alternative Motion for Remittitur**

"A remittitur, in effect, is a statement by the court that it is shocked by the jury's award of damages." *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990). "If a district court finds that a verdict is excessive, it may order a new trial, order a new trial limited to damages, or, under the practice of remittitur, condition denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." *Thorsen v. County of Nassau*, 03-CV-1022, 2010 WL 2671816, at *11 (E.D.N.Y. June 30, 2010) (citing *Cross v. N.Y. City Transit Auth.*, 417 F.3d 241, 258 [2d Cir. 2005]). "However, it is not among the powers of the trial court, where the jury has awarded excessive damages, simply to reduce the damages without offering the prevailing party the option of a new trial." *Thorsen*, 2010 WL 2671816, at *11 (citing *Tingley Sys., Inc. v. Norse Sys., Inc.*, 49 F.3d 93, 96 [2d Cir. 1995]) (other citation omitted).

"In determining whether t[o] grant a motion for remittitur, it is appropriate to refer to other awards in similar cases, although the court should not limit its review too narrowly." *Thorsen*, 2010 WL 2671816, at *11 (citing *Zakre v. Norddeutsche Landesbank Girozentrale*, 541 F. Supp.2d 555, 568 [S.D.N.Y. 2008]) (other citation omitted).

**III.   ANALYSIS**

      **A.**    **Defendants' Motions for Judgment as a Matter of Law and/or a New Trial Based on Their Arguments that (1) the Jury Verdict Was Inconsistent, (2) the Verdicts Against Defendant Talbots and Graney Were Not Supported, and (3) Plaintiff's Counsel's Conduct During Summation Was Improper**

As an initial matter, the Court rejects Defendants' argument that the jury's verdict was inconsistent. Setting aside the fact that Defendants' have raised this argument for their first time in their post-trial motion papers, the argument is without merit. Contrary to Defendants' argument, there was evidence in the record from which a rational factfinder could conclude that

7

(1) Defendant Talbot subjected him to excessive force, (2) Defendant Graney failed to intervene to stop the use of force, despite having an opportunity to do so, and (3) Defendants Finn and Elser did not subject Plaintiff to excessive force and/or fail to intervene to stop the use of force, despite having an opportunity to do so.

For example, Plaintiff testified, among other things, that (1) on May 12, 2005, Defendants Talbot and Graney brought him from the recreation area outside of Auburn Correctional Facility to a search room inside the prison with no cameras, (2) Defendants Talbot and Graney pat-frisked him, (3) Defendant Talbot began to choke him, (4) he tried to prevent the choking, and was tripped to the ground,[2] (5) once on the ground, he curled up into a fetal position, (6) as a result, he could not tell who used force against him,[3] (7) while on the ground, he saw other corrections officers present (whom he later identifies as Officer Marr and Defendants Finn and Elser),[4] who could have prevented the assault, and (8) sometime after the assault was finished, Defendants Finn and Elser escorted him to the special housing unit. (Dkt. No. 117, at 52-69.)

In addition, Defendant Finn testified that, when he and Defendant Elser arrived at the area to which he was called to report, Defendants Talbot and Graney (and former Defendant Marr) were "standing there," and Plaintiff was "standing with his hands cuffed behind his back." (Dkt. No. 118, at 11.)[5]  Similarly, Defendant Talbot testified that Defendant Graney, Officer

---

[2]      Plaintiff later testified that Defendants Talbot and Graney used force to bring him to the ground.  (Dkt. No. 117, at 88-89.)

[3]      Plaintiff later testified that he "would say Talbot and Graney was the one that was kicking me and punching me."  (Dkt. No. 117, at 90; *see also* Dkt. No. 117, at 115-16.)

[4]      (Dkt. No. 117, at 86-87.)

[5]      Defendant Elser provided similar testimony.  (Dkt. No. 118, at 62.)

8

Marr and himself were the only corrections officers present in the search room when the use of force took place. (Dkt. No. 117, at 164-68.)[6] Moreover, it is undisputed that Defendant Talbot used force against Plaintiff on May 12, 2005.

The Court likewise rejects Defendants' argument that a rational factfinder could not conclude that Plaintiff proved, by a preponderance of the evidence, that Defendant Talbot's use of force was the proximate cause of his broken rib.[7] Again, it is undisputed that Defendant

---

[6] Defendant Graney testified that he prepared a Use of Force report regarding the use of force against Plaintiff on May 12, 2005. (Dkt. No. 78, Attach. 1, at 23-25.) Defendant Graney further testified that he prepared an Employee Accident/Injury Report stemming from the incident that occurred on May 12, 2005. (*Id*. at 26-27.) However, Defendant Graney also testified that he did not have any specific recollection of the incident involving Plaintiff. (*Id*. at 23-27, 34-35.)

[7] The Court acknowledges that it does have some reservations regarding the rationality of the jury's conclusion in light of the following facts: (1) although Plaintiff testified that he was not examined by a member of medical staff until "a couple days" after the incident of May 12, 2005, the medical report introduced into evidence establishes that he was examined by a nurse within one hour of the incident (Dkt. No. 117, at 63, 65, Exh. D-19); (2) Plaintiff testified that he pled guilty to having drugs in his system based on a positive urinalysis test, taken two days after the incident while he was being held in an observation cell (Dkt. No. 117, at 107-10); (3) Defendant Talbot testified that (a) he used force against Plaintiff after Plaintiff refused to discard a small plastic bag that he was concealing underneath his tongue (suggesting that at least some use of force was reasonable under the circumstances), and (b) once Plaintiff was taken to the ground, Plaintiff removed the plastic bag from his mouth, while swallowing the bag's contents (Dkt. No. 117, at 165-168, 206); and (4) during summation, Plaintiff's counsel improperly stated, "And how do you get a broken rib? You don't get it when somebody [who weighs 200 pounds] is standing next to you and grabbing you by the waist and then going down. . . . In order to cause that much blunt force from a tackle, you'd have to start like 10 feet away and run after him and tackle him and slam him to the ground" (Dkt. No. 118, at 468, Lines 4-9). However, the Court's reservations do not render the jury's conclusion irrational, given the other evidence adduced at trial (discussed above). Simply put, in light of the fact that corrections officers have not only a right, but an obligation, to attempt to retrieve and secure contraband possessed by inmates, in order for the jury to have reached its conclusion, it had to, among other things, (1) disregard the inconsistencies in Plaintiff's testimony, and (2) discredit (or disregard) Defendant Talbot's testimony that (a) Plaintiff had a plastic bag in his mouth, which he recovered, and (b) he used the amount of force necessary under the circumstances to retrieve this object.

Talbot used force against Plaintiff on May 12, 2005. It is further undisputed that an x-ray examination taken twenty-four days after force was used against Plaintiff revealed that he had one cracked rib.[8] Moreover, Plaintiff testified that (1) the use of force included kicking and punching, (2) he did not have any other altercations or injuries between May 12, 2005, and June 9, 2005 (the day he received an x-ray examination), (3) he complained about the pain in his ribs "[e]very day", and (4) his family called the prison facility regarding his pain. (Dkt. No. 117, at 68-69.) Finally, although Defendants introduced into evidence a medical report (prepared by a nurse within one hour of the occurrence of the incident) opining that Plaintiff had suffered no apparent injuries, Defendants failed to introduce any evidence establishing that there was another cause of the cracked rib that appeared on Plaintiff's x-ray report on June 9, 2005.

The Court also rejects Defendants' argument that the jury's finding that Defendant Graney had an opportunity to intervene to prevent Defendant Talbot's assault on Plaintiff, yet failed to do so, was not supported by a preponderance of the evidence admitted at trial. As an initial matter, Defendant Graney testified that he had no recollection of the incident. Moreover, both the testimony of Defendant Talbot and the use of force report (prepared by Defendant Graney) indicate that Defendant Graney was present during the incident. In addition, Plaintiff testified that Defendant Graney was present during the use of force, and that he could have intervened but did not. Finally, while the jury obviously rejected Plaintiff's testimony that

---

[8] Again, the Court acknowledges that it does have some reservations regarding the rationality of the jury's conclusion that Defendant Talbot's use of force was the *sole* cause of Plaintiff's cracked rib in light of the fact that (1) the examination performed by Nurse Vega within one hour after the assault revealed no injuries, and (2) three weeks passed between the time of the assault and the time that Plaintiff received the x-ray examination revealing a cracked rib. However, again, the Court's reservations do not render the jury's conclusion irrational, given the other evidence adduced at trial (discussed above).

Defendant Graney used force to bring him to the ground, that fact does not preclude the jury from concluding that Defendant Graney was present during the assault and had an opportunity to intervene to stop it, yet failed to do so.  This is especially true in light of the fact that Defendant Graney completed an Employee Accident/Injury Report relating to this incident, which establishes that Defendant Graney was close enough to Plaintiff during the assault to be physically impacted by it.

Finally, the Court rejects Defendants' argument that Plaintiff's counsel's conduct during summation was not "fair comment" on the evidence and improperly influenced the jury. Defendants' argument is based on Plaintiff's counsel's representations concerning Defendants' failure to produce the nurse who examined Plaintiff after the use of force incident.  In particular, Defendants take issue with the following remarks:

> And if Mr. Murray was indeed examined on that day, where's the nurse? Why didn't they bring her in? She wasn't here. She didn't testify. There's a form filled out, we'll conclude yes, there's a form that says there was no injuries on Mr. Murray. But this guy who complains as much as Mr. Mulvey pointed out on the stand, do you think that he'd actually not complain after having this incident in the yard? After what the version of the events are by the defendants, that they used the body hold, tackled him to the ground, will he be the kind of person that would say to the nurse, no, nothing's wrong with me? That's unbelievable. If some medical professional saw him on that date and time, guaranteed there'd be a record of him complaining about those injuries, about that pain, because he does that. He has a history of that. Mr. Mulvey established that for you.

(Dkt. No. 118, at 129-30 [attaching pages "477" and "478"of the trial transcript].)

However, in Defendants' counsel's summation, which occurred prior to Plaintiff's summation, Defendants' counsel stated as follows:

> You'll also see, and I want you, I urge you, I implore you, please, study these photographs of the plaintiff that were taken at 4:30 p.m. on the day of the event. Look at his body. Look at his head. Look at his

11

> neck where he was supposedly choked. Look at his torso where he was supposedly punched and kicked. Study these. Use your own experience. Does this look like a person who half hour ago was submitted to a sadistic and vicious beating by four guards? So, the record indicates that Mr. Murray had medical attention within the hour by a nurse, and her professional report was no apparent injuries.

(*Id*. at 112 [attaching page "460" of the trial transcript].)

Based on defense counsel's comment regarding Plaintiff's receipt of medical attention, which suggest that the nurse's opinion (expressed in her report) that Plaintiff suffered no apparent injuries should be accepted, it was more than "fair" for Plaintiff's counsel to comment about the absence of the nurse's testimony.

**B.  Defendants' Motion for a New Trial or Remittur Based on Defendants' Argument that the Award Was Excessive**

As stated above in Part I.B. of this Decision and Order, Defendants argue that the Court should significantly reduce the award of compensatory damages for Plaintiff's injury as unsupported by the evidence. In response, Plaintiff argues that the jury's damages award is amply supported by the trial record and is actually less than, or at least equal to, awards which were upheld for injuries in the absence of physical harm.

As an initial matter, the Court rejects Plaintiff's argument that the award should be upheld because it is less than, or at least equal to, awards which were upheld for injuries in the absence of physical harm. The Court notes that the three cases Plaintiff relies on for his argument that the award should not be reduced (i.e., *Patterson v. Balsamico*, 440 F.3d 104 [2d Cir. 2006], *Port Auth. Police Asian Soc. v. Port Auth. of N.Y. and N.J.*, 681 F. Supp.2d 456 [S.D.N.Y. 2010], and *DiSorbo v. Hoy*, 343 F.3d 172 [2d Cir. 2003]) are factually distinguishable from Plaintiff's case because, in each of those cases, the award was based, at least in part, on emotional and/or psychological injuries. However, contrary to Plaintiff's argument, there was

no evidence introduced at trial that Plaintiff suffered any emotional and/or psychological injuries as a result of the assault.

Furthermore, the Court rejects Plaintiff's argument that the award is in line with awards issued in similar cases. As stated above in Part II.A.3. of this Decision and Order, "[i]n determining whether t[o] grant a motion for remittitur, it is appropriate to refer to other awards in similar cases, although the court should not limit its review too narrowly." *Thorsen*, 2010 WL 2671816, at *11 (citing *Zakre v. Norddeutsche Landesbank Girozentrale*, 541 F. Supp.2d 555, 568 [S.D.N.Y. 2008]) (other citation omitted). The Court must therefore examine other awards in cases involving a plaintiff who suffered, among other injuries, one or more cracked or broken ribs stemming from the use of excessive force by one or more defendants.[9] The Court's research reveals six such federal cases, and one such New York State case.[10]

---

[9] Plaintiff testified that his injuries were as follows: a clogged ear, which was discolored, a headache, a bump on his head, a broken rib, and eye, neck and back pain, which were pre-existing but exacerbated by the assault. (Dkt. No. 117, at 65-66, 73-74, 79.) Other than Plaintiff, no witnesses provided testimony regarding his injuries. In addition, the only medical documentation introduced to support Plaintiff's testimony was an x-ray report prepared twenty-eight days after the assault, which indicated that Plaintiff had a fractured rib. (Dkt. No. 117, at 67-68.)

[10] *See Barnard v. Piedmont Reg'l Jail Auth.*, 07-CV-0566, 2009 WL 2872510, at *2-3, 5-6 (E.D. Va. Sept. 3, 2009) (adopting magistrate judge's bench decision issued following an evidentiary hearing, and awarding plaintiff $250 in compensatory damages against each of the four defendants for his fractured eighth rib and a five-inch welt on top of his head, as well as a total of $5,500 in punitive damages); *Kunz v. DeFelice*, 538 F.3d 667, 670-71 (7th Cir. 2008) (affirming district court's conclusion that jury's compensatory damages award of $10,000 and punitive damages award of $250,000 [later reduced to $90,000] were not excessive where plaintiff suffered a broken rib after being punched and kicked by defendant); *Martinez*, 2008 WL 5157395, at *3-4, 8-9 (concluding that jury's award against individual defendants in the amounts of $200,000, $150,000, $100,000, and $50,000 was not excessive where plaintiff suffered a broken rib, lingering pain, and major documented psychological problems as a result of defendants' use of excessive force on two separate occasions); *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 517-20 (9th Cir. 1999) (noting that the jury's award of $60,400 in compensatory damages, where plaintiff suffered two fractured ribs, a collapsed lung, and internal bleeding, was

In three of these seven cases, the jury's award was greater than the amount that Plaintiff was awarded. *See Martinez*, 2008 WL 5157395, at *4, 8-9; *Ismail*, 899 F.2d at 184-87; *De La Cruz*, 163 A.D.2d at 163. However, in each of these cases, the plaintiff's injuries were not limited to a broken or fractured rib and temporary discomfort. Rather, in *Martinez*, the plaintiff, who was assaulted on two separate occasions, also suffered lingering back pain more than five years after the incidents, as well as major documented psychological problems, which included "thoughts of suicide, recurrent nightmares and flashbacks of the assaults, fear of the presence of law enforcement officials, and other signs of anxiety."[11] Moreover, in *Ismail*, the plaintiff, who was being issued a traffic ticket prior to the assault, also suffered two displaced vertebrae and serious head trauma. *Ismail*, 899 F.2d at 185-86. In addition, the manner of the assault caused the plaintiff "[1] suffer[ing] from chronic intermittent pain in his arms, torso and head, . . .

---

not challenged on appeal); *Stachniak v. Hayes*, 989 F.2d 914, 916-17, 919, 923 (7th Cir. 1993) (affirming district court's denial of defendants' motion for new trial where jury awarded plaintiff $25,000 on his excessive force claim based on his suffering a controlled nose bleed, bruises on his forehead, a laceration behind his right ear, a non-displaced nasal bone fracture, and a non-displaced tenth rib fracture); *Ismail v. Cohen*, 899 F.2d 183, 184-87 (2d Cir. 1990) (vacating district court's remittitur and reinstating jury's original award of $650,000 where plaintiff suffered a cracked rib, two displaced vertebrae, serious head trauma, chronic pain, and "considerable" and continuous mental and emotional injuries as a result of defendants' excessive force); *De La Cruz v. City of New York*, 163 A.D.2d 163, 163 (N.Y. App. Div., 1 Dept. 1990) (concluding that damages award of $1 million for two unprovoked beatings by on-duty police officers was not excessive where plaintiff sustained a broken rib, abrasions, and a herniated disc necessitating surgery and several hospitalizations, plaintiff continued to suffer discomfort and back pain several years after incident, and plaintiff, the proprietor of a small grocery store, was unable to maintain the business due to incapacity and filed for bankruptcy protection).

[11] *Martinez*, 2008 WL 5157395, at *3 (noting that the testimony introduced at trial established that plaintiff was receiving "ongoing treatment" more than five years after the incidents, and that plaintiff's licensed clinical social worker "convincingly testified that despite the passage of five and one-half years since the relevant events, plaintiff experiences significant ongoing effects including sleeplessness, recurring nightmares, panic attacks, trauma, fear of being on the street, and depression, and that he has been tearful throughout the entire therapeutic process").

14

[which] interfered to some extent with his daily activities[, and 2] . . . considerable mental and emotional injury that had not healed entirely over the years." *Ismail*, 899 F.2d at 185-86.[12] Finally, in *De La Cruz*, the plaintiff sustained a broken rib, abrasions, and a herniated disc, which necessitated surgery and several hospitalizations, caused the plaintiff to suffer continued discomfort and back pain several years after incident, and rendered him unable to maintain his business. *De La Cruz*, 163 A.D.2d at 163.

In the remaining four cases, in which there was no evidence introduced of long-term lingering pain and/or mental or emotional distress, the compensatory damage awards were less than the amount that Plaintiff was awarded. *See Barnard*, 2009 WL 2872510, at *6; *Kunz*, 538 F.3d at 670-71; *Ruvalcaba*, 167 F.3d at 519-20; *Stachniak*, 989 F.2d at 916-17. Moreover, in three of the four cases, the award was *significantly* less. *See Barnard*, 2009 WL 2872510, at *6; *Kunz*, 538 F.3d at 670-71; *Stachniak*, 989 F.2d at 916-17.[13] Furthermore, in *Ruvalcaba*, the case involving the largest compensatory damage award of these four cases (which was almost half that of the compensatory award in this case),[14] in addition to suffering *two* fractured ribs, the plaintiff suffered a collapsed lung and internal bleeding.

---

[12] The police officer who assaulted the plaintiff in *Ismail* did so by striking him in the back of the head with a weapon, pressing a gun into the plaintiff's head, threatening to kill him, and implanting a knee firmly in his back. Expert medical witnesses testified in support of all of the plaintiff's claims. *Ismail*, 899 F.2d at 185-86.

[13] Taking into account inflation, $25,000 in 1991 (the year the jury returned its verdict) is worth approximately $40,100 today. *See* http://www.bls.gov/data/inflation _calculator.htm (last visited August 11, 2010).

[14] In *Ruvalcaba*, the plaintiff was awarded $60,400. Taking into account inflation, this amount in 1995 (the year the jury returned its verdict) is worth approximately $86,500 today. *See* http://www.bls.gov/data/inflation_calculator.htm (last visited August 11, 2010).

Based on these cases, as well as the lack of evidence introduced at trial regarding long-term lingering pain, emotional distress, and/or any other serious physical injury, the Court finds that the jury's damage award was excessive. More specifically, the Court finds that, based on a comparison of broken rib cases in which there was no evidence introduced of long-term lingering pain and/or mental or emotional distress, an award of fifty thousand dollars ($50,000) is appropriate. As a result, the Court directs Plaintiff to notify the Court, within thirty days of the date of this Decision and Order, whether he wishes to accept a reduction in the compensatory damage award to fifty thousand dollars ($50,000) or have a new trial.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for judgment as a matter of law, notwithstanding the jury's verdict (Dkt. No. 107) is **DENIED**; and it is further

**ORDERED** that Defendants' motion for a new trial (Dkt. No. 107) is **DENIED**; and it is further

**ORDERED** that Defendants' motion for remittitur (Dkt. No. 107) is **GRANTED**. Plaintiff is directed to notify the Court, within thirty days of the date of this Decision and Order, whether he wishes to accept a reduction in the compensatory damage award to fifty thousand dollars ($50,000) or have a new trial.

Dated: January 21, 2011
       Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge